967 So.2d 345 (2007)
H & H ELECTRIC, INC., Dominick R. Zanti, and Stephen J. Nix, Appellants,
v.
Fernando J. LOPEZ, Appellee.
No. 3D07-145.
District Court of Appeal of Florida, Third District.
October 10, 2007.
*346 Billing, Cochran, Heath, Lyles, Mauro & Anderson and Donna M. Krusbe, West Palm Beach and Vivian H. Fazio, Ft. Lauderdale, for appellants.
Lauri Waldman Ross and Theresa L. Girten, Miami; Leesfield, Leighton & Partners and Thomas Scolaro, Miami, for appellee.
Before WELLS and CORTIÑAS, JJ., and FLETCHER, Senior Judge.
CORTIÑAS, Judge.
Appellants, H & H Electric, Inc. ("H & H") and Dominick R. Zanti ("Zanti"), seek review of a final judgment awarding damages in the amount of $435,968.16 to the appellee, Fernando J. Lopez ("Lopez"), pursuant to a jury verdict.[1] Appellants contend that the trial court committed reversible error by precluding commentary by Dr. Robert Cantana, the appellants' expert, regarding how surveillance video footage procured by appellants contradicted Lopez's claims of injury and how viewing the video changed Dr. Cantana's opinion. Appellants also allege that the trial court erred in denying their request for a jury instruction on pre-existing injury, instructing the jury that the accident in question was the legal cause of Lopez's injuries, and in giving an instruction on aggravation of a pre-existing condition. We affirm.

*347 I. Standard of Review

We review discretionary issues involving the admission of evidence and the issuance of jury instructions for abuse of discretion. See Blanco v. State, 452 So.2d 520 (Fla.1984); Town of Palm Beach v. Palm Beach County, 460 So.2d 879 (Fla. 1984) (stating that the scope of subjects about which an expert can testify is governed by the abuse of discretion standard); Hart v. Stern, 824 So.2d 927 (Fla. 5th DCA 2002); Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000); Jimenez v. Gulf & W. Mfg. Co., 458 So.2d 58 (Fla. 3d DCA 1984).

II. Factual Background
Lopez was injured when his motorcycle was struck from behind by a truck driven by Zanti, who at the time was an employee of H & H. As a result of being struck by Zanti, Lopez suffered various injuries. Prior to trial, the parties agreed on causation for Lopez's pelvic and elbow injuries, prompting the trial court to partially grant Lopez's motion for summary judgment, "on the issue of causation for [Lopez's] injuries to his elbow, pelvic area and sacroiliac junctions as a result of this incident. . . ." The cause of Lopez's lower back injury, however, remained contested. During the course of litigation, and approximately sixteen months after the accident, appellants procured a surveillance video of Lopez washing his car and riding his motorcycle over the course of a particular weekend. Among those who viewed the video was Dr. Cantana who asserted that his opinion of Lopez's injuries changed after viewing the video. Consequently, Dr. Cantana issued an addendum to his previously-issued independent medical examination report on Lopez's injuries. The parties argued over whether or not the video should be admitted into evidence, and ultimately it was allowed. However, Dr. Cantana's commentary on the video and how it contradicted the injuries claimed by Lopez was precluded. Dr. Cantana was also not permitted to testify as to how viewing the video led him to change his opinion of Lopez's injuries.

III. Preclusion of Dr. Cantana's Commentary and Testimony as to the Surveillance Video
Appellants argue that the preclusion of Dr. Cantana's commentary constitutes reversible error. The record reveals that the trial court examined and analyzed the need for admission of the video into evidence as well as whether it was appropriate to allow Dr. Cantana's testimony regarding the video. These issues were addressed at a pretrial hearing, where ruling was deferred, and were ultimately revisited during trial. After hearing arguments from appellants and Lopez, as well as voir dire testimony of Dr. Cantana during trial, the court determined that, although the video would be shown to the jury, Dr. Cantana would not be allowed to comment on the video or its impact on his opinion. Notably, Dr. Cantana did not testify that his medical opinion on causation changed as a result of the video. The trial court took into account the fact that Lopez never represented that he was unable to perform any of the activities depicted in the video and, therefore, the video could not be used to impeach him. The record also shows that the trial court allowed appellants to make any and all arguments concerning the video to the jury, but determined that allowing an expert to comment on the video would "elevate" the video in the eyes of the jury. Moreover, the court reasoned that the jury would be able to properly make its own determination as to the content of the video.
We find no abuse of discretion by the court. Where a trial court has weighed probative value against prejudicial *348 impact before reaching its decision, an appellate court shall not overturn such a decision absent a clear abuse of discretion. Trees v. K-Mart Corp., 467 So.2d 401 (Fla. 4th DCA 1985). Moreover, the content of the video was addressed during trial through the testimony of Sidney Davis, the private investigator who filmed the video. During their closing argument, appellants were also able to discuss points regarding the video similar to those upon which Dr. Cantana was intended to comment. As such, there is no abuse of discretion by the trial court, as its actions do not fall within the parameters of being "arbitrary, fanciful, or unreasonable." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (citing Delno v. Mkt. St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)).

IV. Issuance of Jury Instructions
Over appellants' objection, the court gave the following jury instructions, among others:
The court has determined and now instructs you as a matter of law that Defendants H & H Electric, Incorporated and Dominick Zanti were negligent and the legal cause of Plaintiff's, Fernando Lopez's, injuries.
. . .
If you find that H & H Electric, Incorporated, and Dominick Zanti caused a bodily injury and that injury resulted in an aggravation of an existing disease or physical defect or activation of a latent disease or defect you should determine what portion of Fernando Lopez's condition resulted from the aggravation or activation.
Appellants contend that the jury instructions as given were "misleading or confusing," in part because appellants had not conceded liability as to the lower back pain and because one instruction specified that appellants were the cause of the injuries while the other referenced the jury being able to "find" that appellants caused the bodily injury. We disagree. Although the court instructed the jury that appellants "were negligent and the legal cause of [Lopez's] injuries," this instruction was tempered by the subsequent instruction that "[i]f you find that [Defendants] . . . caused a bodily injury and that injury resulted in an aggravation of an existing disease or physical defect or activation of a latent disease or defect you should determine what portion of Fernando Lopez's condition resulted from the aggravation or activation."
The key to reading the jury instructions in tandem lies in the conjunction between being able to "find" that appellants "caused a bodily injury" and that such "injury resulted in an aggravation of an existing condition." This instruction can reasonably be read in harmony with the previous jury instruction so as to qualify that, although there was causation of the injuries by appellants, a particular portion of the damages, if not all, may be proportionately reduced if a prior existing condition had been aggravated by the injuries. The court explained that the instructions given provided appellants with the opportunity to argue the extent of any such pre-existing injuries. The court also noted, however, that there was no medical testimony stating that pre-existing injuries were the cause of Lopez's lower back pain.
Decisions regarding jury instructions are within the sound discretion of the trial court and absent prejudicial error, shall not be disturbed on appeal. Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990). "Prejudicial error requiring a reversal of judgment or a new trial occurs only where `the error complained of has resulted in a miscarriage of justice.'" Id.; § 59.041, Fla. Stat. (2006). Furthermore, *349 "[a] `miscarriage of justice' arises where instructions are `reasonably calculated to confuse or mislead' the jury." Goldschmidt, 571 So.2d at 425 (citing Fla. Power & Light Co. v. McCollum, 140 So.2d 569 (Fla.1962)). In the instant case, there is no evidence that the jury instructions given were reasonably calculated to mislead the jury, particularly in light of the fact that the trial court expressly stated that the appellants had the opportunity to argue as to the extent and percentage of the damages that may be attributable to a pre-existing condition. As such, we find no reversible error in the issuance of these instructions.
Appellants further argue that the court's failure to give the jury a portion of a particular instruction constituted reversible error.[2] In order to demonstrate that failure to give a jury instruction constitutes reversible error, "an appellant must establish that the requested instruction contained an accurate statement of the law, the facts in the case supported a giving of the instruction, and the instruction was necessary for the jury to properly resolve the issues in the case." Barkett v. Gomez, 908 So.2d 1084, 1086 (Fla. 3d DCA 2005). With respect to the factual requirement, the trial court specifically noted that there was no medical testimony substantiating appellants' assertion of a pre-existing condition. The trial court determined that the jury instructions ultimately given were the most appropriate for this particular case. Additionally, as the trial court explained, the instructions that were actually given to the jury regarding the "aggravation of an existing disease or physical defect or activation of a latent disease" allowed appellants the opportunity to argue as to the extent or percentage of Lopez's pain caused by the pre-existing condition. As the jury was instructed to determine what part, if any, of Lopez's condition resulted from the aggravation of a pre-existing injury, the need for the omitted portion of the jury instruction requested by appellants was obviated and such was not necessary for the jury to properly resolve the issues before it.
Because the appellants failed to demonstrate an abuse of discretion as to the preclusion of Dr. Cantana's testimony and as to the issuance of the jury instructions, we affirm the jury verdict in favor of Lopez.
Affirmed.
NOTES
[1] Stephen J. Nix was previously dismissed from the lawsuit.
[2] The omitted portion of appellants' proposed jury instruction read:

On the first defense, the issue for your determination is: whether the disability or disfigurement alleged by Fernando J. Lopez is the result of a pre-existing condition and not caused by or aggravated by any acts of the Defendants.